UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ELITE OPERATIONS, INC., <br>    *Plaintiff*, | § <br> § <br> § | CIVIL ACTION 4:13-CV-03461 |
| vs. | § <br> § | |
| UNION PACIFIC RAILROAD CO., <br> UNOVATE, INC., and UNOVATE <br> ENVIRONMENTAL SERVICES, L.P., <br>    *Defendant*. | § <br> § <br> § <br> § | JURY |

## ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW, Plaintiff, Elite Operations, Inc., (hereafter "Elite") and complains of Defendant Union Pacific Railroad Company (hereinafter "UPRC"), and Defendants Unovate, Inc. and Unovate Environmental Services, L.P. (hereinafter jointly referred to as "Unovate"), and would respectfully show the Court as follows:

1. This is a civil action for cost recovery and contribution brought pursuant to Section 107 of CERCLA, 42 U.S.C. §§ 9607, based on the disposal of hazardous substances by UPRC at real property located in Houston, Harris County, Texas.  Plaintiff has contemporaneously served a copy of this Original Complaint on the Attorney General of the United States and the Administrator of the Environmental Protection agency pursuant to Section 113(l) of CERCLA.

## I.  PARTIES

2. Plaintiff Elite (f/k/a Elite Sales, Inc.) is Florida Corporation doing business in Harris County, Texas.

3. Defendant, UPRC, is a Delaware corporation authorized to do business in the State of Texas.  It can be served though its agent, CT Corporation System, at 350 N. St. Paul St., Suite

1

2900, Dallas, TX 75201 or wherever it can be found.

4.     Unovate, Inc. (a/k/a Unovate Environmental Services, Inc.) is a Texas corporation with its principal place of business at 3013 Fountain View Drive, Suite 110, Houston, TX 77057.  It can be served though its agent, Mitchell VerVoort, at 3 Riverway, Suite 1800, Houston, TX 77056 or wherever he can be found.

5.     Unovate Environmental Services, L.P. is a limited partnership with its principal place of business at 3013 Fountain View Drive, Suite 110, Houston, TX 77057.  It can be served though its general partner Unovate, Inc., and its agent, Mitchell VerVoort, at 3 Riverway, Suite 1800, Houston, TX  77056 or wherever he can be found.

## II.  JURISDICTION AND VENUE

6.     The Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 9607 and 9613(b) and 28 U.S.C. § 1331, and the principles of supplemental jurisdiction.

7.     Venue is proper in this Court pursuant to 42 U.S.C. § 613(b) and 28 U.S.C. § 1391(b).

## III.  BACKGROUND FACTS

8.     Elite seeks to recover environmental remediation costs from UPRC for the 1.522 acres of real property located at 2003 Edwards Street, Houston, Harris County, Texas (the "Property").

9.     From the 1880s to approximately 1962, Southern Pacific Railroad Company, a predecessor of UPRC, owned the Property, which was a part of a much larger parcel utilized for decades in railroad operations and specifically for repair shops and later a "Scrap & Reclamation Yard."

10.    On the Property, the UPRC specifically operated a reclamation shop, storage buildings, and a number of railroad tracks.  In the immediate vicinity were a scale repair shop, a pattern shop, and storage buildings.

11. Southern Pacific Company sold and conveyed the Property in the 1960s, and a warehouse building with offices was constructed on the Property. This building still exists today, and there has been no evidence of significant or heavy industrial activity on the Property since the rail operations ceased.

12. In 1998, Elite entered into a contract to purchase the Property from Thweatt Investment Limited Partnership, Ltd. Defendant Unovate was retained to perform a Phase I Environmental Site Assessment ("Phase I"). The sole purpose of this Phase I was to determine whether there were any environmental concerns at the Property, and Unovate allegedly conducted the Phase I "in conformance with the scope and limitations of the ASTM Standard Practice for Site Assessments Phase I Environmental Site Assessment Process (E 1527)." Additionally, Unovate knew that Elite would rely upon the Phase I when purchasing the Property.

13. The Phase I did not identify any possible contamination and specifically "revealed no significant evidence of environmental concerns in connection with the [Property]." Relying on the Phase I, Elite purchased the Property.

14. From 1998 until 2012, Elite owned the Property and used the warehouse on the property to store finished wire, rope, and cable materials for resale.

15. In late 2012, Elite was approached to sell the Property and in the course of negotiations, a Limited Phase II Environmental Site Assessment was performed on the Property ("Phase II"). The Phase II consisted of eleven soil borings.

16. A total of seventeen samples were taken from the eleven soil borings. All seventeen samples were positive for RCRA Metals and other hazardous substances. This was the first time Elite knew or should have known that the Property was contaminated.

17. The contamination discovered at the Property is consistent with rail yard operations, and

the only source of the significant contamination at the Property is the former "Scrap & Reclamation Yard" and related operations by Defendant UPRC. The contamination consists of lead, mercury, and silver concentrations, among other hazardous substances, that exceed the Tier 1 Protective Concentration Levels (PCLs) for both Residential and Commercial/Industrial property.

18.  In 2013, Elite sold the Property to Silver Elite, L.P. Elite escrowed $400,000.00 to cover the cleanup costs of the contamination on the Property.

## IV.  CAUSES OF ACTION

**A.  CERCLA § 107 Cost Recovery Action**

19.  Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 though 19 of this Complaint.

20.  There have been releases or substantial threats of releases of hazardous substances, or pollutants or contaminants from the Property into the environment.

21.  The Property is a facility within the meaning of Section 101(9) CERCLA, 42 U.S.C. § 9601(9).

22.  UPRC generated, arranged for disposal or treatment, or transported hazardous substances that were disposed of at the Property.

23.  Section 107(a) of CERCLA, 42 U.S.C. § 9607(a) states in pertinent part:

(a)  Covered persons

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section –

  (1)  the owner and operator of a vessel or a facility,

  (2)  any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

4

> (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport or disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and
>
> (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for –
>
> . . .
>
> (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan; . . . . (emphasis added).

24. Elite has incurred "costs of response" for removal and/or remedial action as defined in Sections 101(23), (24), and (25) of CERCLA, 42 U.S.C. §§ 9601(23), (24), and (25), and as used in Section 107(a) of CERCLA, 42 U.S.C. § 9607(a) because of these releases and threatened releases. Elite now seeks to recover those "costs of response" from UPRC.

25. The response actions taken by or on behalf of Elite at the Property were necessary to protect the public health, welfare, or the environment, and have been and will be consistent with the National Contingency Plan, 40 C.F.R. Part 300.

**B. Negligence**

26. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 though 19 of this Complaint.

27. Because of its faulty and insufficient investigation as well as its failure to comply with ASTM or universally accepted industry standards, Unovate's conclusions in the Phase I were invalid and faulty. Indeed, Elite would not have purchased the Property (or at least purchased the Property for the price it paid) had it known that the Property was contaminated with

hazardous substances.

28. Unovate, therefore, negligently failed to perform the Phase I in accordance with industry and/or ASTM standards. Unovate's negligence was and is a direct and proximate cause of the damages suffered by Elite, for which it now brings suit.

29. Unovate's negligence was unknown to Elite until the results of the Phase II were published on or about December 17, 2012. Therefore, the accrual of Elite's negligence cause of action against Unovate was deferred until this date.

## C. Negligent Misrepresentation

30. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 though 19, 28, and 29 of this Complaint.

31. Unovate made misrepresentations in its Phase I, as described above, that supplied false information to Elite, information that Elite justifiably relied upon, which proximately caused Elite damages.

## D. Declaratory Judgment Action

32. Elite seeks a declaratory judgment pursuant to the Texas Declaratory Judgment Act that UPRC, and not Elite, is the party responsible for the solid waste and pollution contained in and at the Property.

33. Elite seeks attorney's fees pursuant to Tex. Civ. Prac. & Rem. Code § 37.009.

## V. JURY DEMAND

34. Elite hereby requests a trial by jury, and has tendered the corresponding jury fee.

## VI. CONDITIONS PRECEDENT

35. All conditions precedent have been performed or have occurred.

## VII.  PRAYER

WHEREFORE, Plaintiff Elite Operations, Inc. prays that the Defendants Union Pacific Railroad Company, Unovate, Inc., and Unovate Environmental Services, L.P. be made to appear and answer, and that, upon a jury trial, Elite be awarded, among other things:

a. Judgment against the Defendants for compensatory damages, including but not limited to the amount of cost recovery for all response costs incurred in the past or in the future by Plaintiff relating to the Property;

b. A declaratory judgment as described above;

c. Pre-judgment interest;

d. Post-judgment interest;

e. Costs of Court; and

f. Such other and further relied to which the Plaintiff is entitled.

          Respectfully submitted,

          /S/  KEITH W. LAPEZE
          Keith W. Lapeze
          Attorney-In-Charge
          TBA No.  24010176
          SD No. 24437
          1113 Vine Street, Suite 100
          Houston, Texas 77002
          Tel. No. (713) 739-1010
          Fax No. (713) 739-1015
          E-Mail keith@lapezefirm.com

          OF COUNSEL:

          Taylor Shipman
          TBA No. 24079323
          E-Mail taylor@lapezefirm.com
          The Lapeze Firm, P.C.

          ATTORNEYS FOR PLAINTIFF